UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH SEKERKE, | Case No.: 19cv1360-LAB (MSB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS [ECF NO. 23]** |
| CITY OF NATIONAL CITY, et al., | |
| Defendants. | |

Keith Sekerke ("Plaintiff"), has filed a civil rights action pursuant to 42 U.S.C. § 1983 against the City of National City ("National City"), and eleven National City Police Department ("NCPD") officers: Kevin Hirsh, Matt Smith, Anthony Sabala, Omar Ramirez, Steven Anderson, Vincent Fernando, Emma Cabata, Shane McClure, Matthew Cardoza, John Doughert, and Matthew Cardoza (collectively, "Defendants," while the individually named officers will be referred to as "Individual Defendants").  (See ECF No. 1 at 1-2.) Currently pending before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, filed on March 4, 2020.  (ECF No. 23.)  This Court has considered the Second Amended Complaint ("SAC"), (ECF No. 6), Defendants' Motion to Dismiss, (ECF No. 23), Plaintiff's Memorandum in Response in Opposition thereto ("Opposition"),

1 (ECF No. 24), and Defendants' Reply, (ECF No. 25).  This Report and Recommendation is

2 submitted to United States Chief District Judge Larry A. Burns pursuant to 28 U.S.C.A. §

3 636(b) and Civil Local Rules 72.3 of the United States District Court for the Southern

4 District of California.  For the reasons set forth below, this Court **RECOMMENDS** that

5 Defendants' Motion to Dismiss for Failure to State a Claim be **GRANTED**.

6 ## I.      PROCEDURAL HISTORY

7       On July 19, 2019, Plaintiff, Keith Sekerke, a state prisoner proceeding in forma

8 pauperis and represented by counsel, filed a complaint alleging causes of action under

9 the Civil Rights Act pursuant to 42 U.S.C.A. § 1983 and state law against the City of

10 National City, NCPD, and Individual Defendants related to Individual Defendants'

11 impound of Plaintiff's vehicle and failure to secure Plaintiff's home subsequent to

12 Plaintiff's arrest.  (ECF No. 1.)  Plaintiff filed his First Amended Complaint on September

13 10, 2019.  (ECF No. 4.)

14       On November 4, 2019, Chief Judge Burns granted Plaintiff's request to proceed in

15 forma pauperis and screened his Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and

16 1915A(b).  (ECF No. 5.)  Chief Judge Burns dismissed all causes of action against NCPD,

17 which was an improper defendant, (id. at 5), dismissed Plaintiff's § 1983 claim based on

18 the Fourteenth Amendment because available state law remedies precluded federal

19 relief, (id. at 7), found Younger[1] abstention appropriate as to Plaintiff's § 1983 claim

20 based on the Fourth Amendment, (id. at 9), and declined to exercise supplemental

21 jurisdiction over Plaintiff's state law claims, (id. at 9).  Finally, Chief Judge Burns

22 permitted Plaintiff 45 days to file his SAC.  (Id. at 10-11.)

23       Plaintiff filed his SAC on December 18, 2019, (ECF No. 6), and the Court ordered

24 the U.S. Marshall to effect service thereof on January 10, 2020, (ECF No. 7).  Plaintiff's

25 SAC alleges causes of action against Individual Defendants for Fourth Amendment

26 violations under § 1983 (Cause One) and negligence and conversion pursuant to state

27

28 _____
[1] Younger v. Harris, 401 U.S. 37 (1971).

law (Causes Two and Three), and against National City for unlawful custom and practice under § 1983 (<u>Monell</u>[2] Claim, Cause Four) and public entity liability pursuant to state law (Cause Five).  (ECF No. 6 at 5-12.)  Defendants filed their Motion to Dismiss on March 4, 2020.  (ECF No. 23.)  Plaintiff filed his Opposition on April 17, 2020.  (ECF No. 24.)  Defendants filed their Reply on April 23, 2020.  (ECF No. 25.)

## II.   FACTUAL ALLEGATIONS IN COMPLAINT

On October 11, 2019, "[Individual][3] Defendants broke down Plaintiff's fence around his house."  (ECF No. 6 at 3.)  Plaintiff permitted Individual Defendants to enter his house, where they arrested him.  (<u>Id.</u>)  Individual Defendants "took possession of Plaintiff's keys" and "called Plaintiff's girlfriend to pick up his dog."  (<u>Id.</u>)  Plaintiff asked Individual Defendants to "lock his door to secure his residence."  (<u>Id.</u>)  However, Individual Defendants "failed to secure Plaintiff's house and left Plaintiff's keys on his car."  (<u>Id.</u>)  Individual Defendants also "possessed Plaintiff's car" and "impounded it for a crime he was never charged with."  (<u>Id.</u> at 4.)

The following day, when Plaintiff's girlfriend returned to the home, she discovered that "Plaintiff's home was looted and squatted in" and his "personal property was stolen and destroyed."  (<u>Id.</u>)  Plaintiff alleges on information and belief that his car "has since been dispensed with in a way that renders him unable to retrieve it."  (<u>Id.</u>)

## III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure[4] 12(b)(6), a motion to dismiss for failure to state a claim tests the legal sufficiency of the claims within the complaint.  Fed. R. Civ. P. 12(b)(6); <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  The pleading standards in

---

[2] <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978).

[3] The Court notes that in the SAC, Plaintiff used the term "Defendants" to refer only to the individual NCPD officers named in the complaint, while the Court uses Individual Defendants to describe the same group herein.  (<u>See</u> ECF No. 6 at 1-2.)

[4] All further references to "Rules" refer to the Federal Rules of Civil Procedure, unless otherwise specified.

19cv1360-LAB (MSB)

Rule 8(a)(2) "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Rule 8 imposes upon the plaintiff, "the obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" which requires factual allegations that consist of "more than labels and conclusions, and a formulaic recitation[s] of the elements of a cause of action." Id. at 555. To survive a motion to dismiss, the pleading in a complaint requires enough facts to state a claim to relief that is plausible on its face and not merely speculative. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint that only pleads facts consistent with a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Twombly, 550 U.S. at 557. A complaint should be dismissed "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 557).

On the other hand, under Rule 8(a)(2), courts are hesitant to "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." Johnson v. City of Shelby, Miss., 574 U.S. 10, 11 (2014). When the complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. In ruling on a motion to dismiss, the Court does not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Twombly, 550 U.S. at 563.

Under Rule 7(a), a plaintiff's opposition to a motion to dismiss does not constitute pleadings, and thus "new" allegations raised in a plaintiff's opposition to a motion to

19cv1360-LAB (MSB)

dismiss are not considered when resolving a motion to dismiss.  Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1014 (9th Cir. 2018).

Generally, courts dismissing a case should freely grant leave to amend.  See Fed. R. Civ. P. 15(a)(2); Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib., 806 F.2d at 1401 (citing Bonanno v. Thomas, 309 F.2d 320, 322 (9th Cir. 1962)).

## IV.  DISCUSSION

### A.  Younger Abstention

Defendants argue this Court should abstain pursuant to Younger v. Harris, 401 U.S. 37 (1971), from reaching Plaintiff's § 1983 claim because it is based on events that occurred during his criminal arrest and the Court previously found on November 4, 2019 that Plaintiff was awaiting trial on charges for which the arrest in this case occurred. (ECF No. 23-1 at 12.)  In general, federal courts are unable to enjoin, interfere with, or encroach upon pending state law criminal proceedings that raise or implicate constitutional issues.  Younger, 401 U.S. at 49.  The Court in Younger considered whether a defendant from a state court prosecution could sue in federal court to enjoin the state prosecution based on a purportedly unconstitutional statute.   Reiterating the long-standing, statutorily-supported national policy of permitting state courts to try criminal cases free from interference by federal courts, the Court held that "the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good faith attempts to enforce it," particularly where the plaintiff could raise the constitutional claims in the state proceeding.  Id. at 43-54.  "Younger abstention involves only such interference as . . . would have the same practical effect on the state proceeding as a formal injunction."  Gilbertson v. Albright, 381 F.3d 965, 977-78 (9th Cir. 2004).  Therefore, if a state criminal proceeding is ongoing, "and if the federal litigant is not barred from litigating federal constitutional issues in that proceeding, then a federal

court action that would enjoin the proceeding, or have the practical effect of doing so, would interfere in a way that <u>Younger</u> disapproves." <u>Id.</u> at 978 (noting that the three-part test from <u>Middlesex County Ethics Committee v. Garden State Bar Ass'n,</u> 457 U.S. 423 (1982) is intended to determine whether <u>Younger</u> applies to specific noncriminal proceedings, and therefore does not apply to criminal state proceedings); <u>see also</u> <u>Samuels v. Mackell</u>, 401 U.S. 66, 69 (1971) ("[A] federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except in very unusual situations, where necessary to prevent immediate irreparable injury.").

<u>Younger</u> requires abstention in § 1983 claims when a party can adequately litigate the constitutional issue in the state criminal proceedings, and where the federal action "would have a substantially disruptive effect upon the ongoing state criminal proceeding." <u>Mann v. Jett</u>, 781 F.2d 1448, 1449 (9th Cir. 1986).  Applying this standard, the Ninth Circuit in <u>Mann</u> found that abstention from a § 1983 action for a Sixth Amendment right-to-counsel violation in ongoing state criminal case was appropriate where federal plaintiff could adequately address any deprivation of his right to counsel in the criminal case, because the "potential for federal-state friction [was] obvious." <u>Id.</u> In contrast, in <u>Lebbos v. Judges of Superior Court, Santa Clara Cty.</u>, 883 F.2d 810, 817 (9th Cir. 1989), the court determined abstention from a § 1983 action was not appropriate where the constitutional defense in the state court action (possible defense of racial discrimination to an unlawful detainer case) was "wholly unrelated" to § 1983 claims that certain debt collection statutes violate the due process and equal protection clauses of the Fourteenth Amendment.  <u>Id.</u> at 812-17.  Based on the lack of relationship between the state court defense and the basis for the § 1983 claim, the court did "not believe that consideration of the [§] 1983 damage claims against the private appellees [would] in any way interfere with the state court proceedings." <u>Id.</u> at 817.

Following the reasoning of <u>Mann</u> and <u>Lebbos</u>, abstention is not appropriate in the case at hand.  The allegations in Plaintiff's SAC concern whether Individual Defendants violated Plaintiff's Fourth Amendment rights by allegedly causing the loss and

destruction of Plaintiff's car and personal property.  (See ECF No. 6 at 4 ("because of [Individual] Defendants' failure to secure Plaintiff's residence, Plaintiff's home was looted and squatted in" and "[Individual] Defendants also possessed Plaintiff's car . . . and impounded it for a crime he was never charged with. . . . Plaintiff . . . alleges[] that his car has since been dispensed with in a way that renders him unable to retrieve it").)  It follows that any property that was lost or destroyed would not be used to prosecute Plaintiff in any ongoing criminal case, and so Plaintiff would not likely bring a Fourth Amendment challenge regarding the alleged behavior as a defense therein.  Defendant, in moving this Court to abstain pursuant to Younger has not submitted any evidence or argument to show that the constitutionality of the alleged behavior has been or is likely to become an issue in the ongoing state criminal case, or that the litigation of Plaintiff's § 1983 claim will enjoin or cause friction with the state court.[5]

On the record before the Court, it is not evident how the instant § 1983 action is likely to enjoin the state criminal case.  See Herrera v. City of Palmdale, 918 F.3d 1037, 1049 (9th Cir. 2019) (holding that the district court erred in abstaining from Fourth Amendment-based § 1983 claims where "[a]lthough the allegations of Fourth Amendment violations [arose] from investigations conducted in the course of the state enforcement action, [the court did not] see how determinations on such claims by the federal court would intrude in the ongoing state nuisance proceeding in [an] impermissible way").  This Court therefore **RECOMMENDS DENYING** Defendants' motion to abstain based on Younger, and will accordingly address Defendants' remaining arguments.

/ / /

/ / /

---

[5] Defendants primarily rely on the District Court's screening order, finding abstention appropriate, and argue that the SAC does not overcome that finding.  (ECF No. 23-1 at 12-13.)  In doing so, Defendants disregard the District Court's January 9, 2020 order directing the U.S. Marshall to effect service of the SAC.  (See ECF No. 7.)

**B.    Group Pleading**

Defendants argue the SAC's first through third causes, which Plaintiff brings against Individual Defendants should be dismissed pursuant to Rule 8(a)(2) because Plaintiff has engaged in "group pleading" and therefore has failed to state the "role each [I]ndividual [D]efendant actually had in causing [Plaintiff] harm."  (ECF No. 23-1 at 11.) Individual Defendants note Plaintiff alleges his injuries were inflicted by all eleven[6] Individual Defendants, collectively, but does not identify the unlawful actions of any particular officer.  (Id.)  In response, Plaintiff contends, under the holding from Wakefield v. Thompson, 177 F.3d 1160 (9th Cir. 1999), he should be "given an opportunity through discovery to identify" the actions of each officer in relation to Plaintiff's purported injuries.  (ECF No. 24 at 8.)

In evaluating a complaint under Rule 12(b)(6), a court must determine whether the pleadings contain enough factual content to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678-79.  Personal liability under § 1983 demands that a plaintiff plead "that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; see also Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) (pleading standards governing § 1983 claims necessarily compel the plaintiff to "set forth specific facts as to each individual defendants'" contributory role in the resulting constitutional injury).  Causation can be established if the pleadings illustrate that the state actor did "an affirmative act, participate[d] in another's affirmative acts, or omit[ted] to perform an act which he [was] legally required to do that cause[d] the deprivation of which [the] complaint is made" or set "in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."  Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).

---

[6] Though Defendants' Opposition claims Plaintiff sues ten different individuals, (ECF No. 23-1 at 11), the SAC names eleven individuals in their personal capacities.  (See ECF No. 6 at 1-2; docket.)

1     The notice pleading standards of Rule 8 control § 1983 claims.  See Erickson v.

2   Pardus, 551 U.S. 89, 93-94 (2007).  A complaint must give the opposing party fair notice

3   of the claims against them as well as detail the grounds upon which each claim rests.  Id.

4   (citing Twombly, 550 U.S. at 555).  The notice requirement is imperative as it "enable[s]

5   the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th

6   Cir. 2011); see also Ortez v. Washington County, State of Or., 88 F.3d 804, 810 (9th Cir.

7   1996) (to survive a motion to dismiss, a plaintiff must "allege overt acts with some

8   degree of particularity such that his claim is set forth clearly enough to give defendants

9   fair notice" of the allegations against them).  Pleadings that lack an affirmative link

10   between the injury and the conduct of the defendant will not state a cause of action

11   under § 1983. See Rizzo v. Goode, 423 U.S. 362, 370-72 (1976).

12     Plaintiff's SAC does not satisfy Rule 8 because it fails to identify which of the

13   eleven Individual Defendants performed each act in the complaint and thereby does not

14   allege affirmative action by any of the defendants.   In the first place, Plaintiff describes

15   the Individual Defendants as "the agents or employees or co-conspirator of National

16   City, the National City Police Department[], and each of the remaining defendants."

17   (ECF No. 6 at 2.)  However, Plaintiff never identifies facts to support any of these

18   relationships.  See, e.g., Crowe v. Cty. of San Diego, 608 F.3d 406, 440 (9th Cir. 2010) (to

19   show conspiracy, a plaintiff "must show 'an agreement or meeting of the minds to

20   violate constitutional rights,' and '[t]o be liable, each participant in the conspiracy need

21   not know the exact details of the plan, but each participant must at least share the

22   common objective of the conspiracy'").  After initially listing each of the Individual

23   Defendants by name, Plaintiff never again distinguishes between them.  (See id.)

24   Instead, Plaintiff groups all Individual Defendants together and alleges all of them did

25   each alleged action.  Plaintiff alleges, for example, "[Individual] Defendants arrested

26   Plaintiff," "[Individual] Defendants took possession of Plaintiff's keys," and "[Individual]

27   Defendants called Plaintiff's girlfriend to pick up his dog."  (Id. at 3.)

28

1   Each Individual Defendant clearly did not perform each of the alleged acts in the SAC.

2   Rather, reason dictates that specific, unidentified officers performed each of the

3   described acts.  This logical conclusion is further supported by Plaintiff's Opposition, in

4   which he explains that he needs discovery to ascertain the actions of the individual

5   officers, and that "the most Plaintiff could do is name the officers who were part of the

6   arrest."  (See ECF No. 24 at 8.)  But "a police officer is not liable simply because he was

7   present at a search."  Young v. City of Visalia, 687 F. Supp.2d 1141, 1153 (E.D. Cal. 2009)

8   (citing Motley v. Parks, 432 F.3d 1072, 1082 (9th Cir. 2005)).  When all defendants are

9   lumped together in factual allegations, such pleading does not provide the defendants

10  with notice of the basis for allegations.  Eunice v. U.S., No. 12cv1635-GPC(BGS), 2013 WL

11  756168, at *3 (S.D. Cal. Feb. 26, 2013) (collecting cases).  Furthermore, an officer may

12  not be held personally liable based only upon "membership in a group without a

13  showing of individual participation in unlawful conduct." Jones v. Williams, 297F.3d

14  930, 935 (9th Cir. 2002) (citing Chuman v. Wright, 76 F.3d 292, 294 (9th Cir. 1996)).  By

15  failing to identify the factual basis for each Individual Defendants' personal participation

16  in the alleged violation of Plaintiff's Fourth Amendment rights, Plaintiff has failed to

17  state a claim against any Individual Defendant.  See, e.g., Gen-Probe, Inc. v. Amoco

18  Corp., 926 F. Supp. 948, 960-61 (S.D. Cal. 1996) (finding dismissal proper where

19  complaint accused "all defendants of all types of infringement," but it was "unclear

20  which of the five is accused of which type of infringement" because complaint "lumps

21  together . . . multiple defendants in one broad allegation"); Gauvin v. Trombatore, 682

22  F. Supp. 1067, 1070-71 (N.D. Cal. 1988) (plaintiff's complaint "lumped" all defendants

23  "together in a single, broad allegation" without "stating with any specificity how each

24  private defendant allegedly deprived [plaintiff] of a right secured by the Constitution"

25  when plaintiff "allege[d] the conduct of each of the defendants deprived [him] of the

26  opportunity 'to secure meaningful and gainful employment'"); Better Homes Realty, Inc.

27  v. Watmore, Case No. 3:16-cv-01607-BEN-MDD, 2017 WL 1400065, at *4 (S.D. Cal. Apr.

28  18, 2017) (complaint comprised of "cursory references to the individual defendants and

1  defendants generally fail[ed] to give the individual defendants notice"); In re iPhone

2  Application Litig., No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20,

3  2011) (finding to survive a motion to dismiss, complaint must "identify what action each

4  Defendant took that caused Plaintiffs' harm, without resort to generalized allegations

5  against Defendants as a whole" so that defendants can respond to allegations); cf.

6  Adobe Systems Incorporated v. Blue Source Group, Inc., No. 14-cv-02147-LHK, 2015 WL

7  5118509, at *964 (N.D. Cal. Aug 31, 2015) (finding that complaint that included group

8  pleading was not deficient where a few specific allegations identified the individual

9  defendant's wrongdoing).

10      Plaintiff's reliance on Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999),

11  does nothing to address the deficiencies noted above.  (See ECF No. 24 at 8.)  The Ninth

12  Circuit in Wakefield evaluated the propriety of a district court's dismissal of the

13  plaintiff's § 1983 claim against an unidentified correctional officer, sued as "John Doe,"

14  based on the observation that "Doe defendants are not favored in the Ninth Circuit."  Id.

15  at 1162-64.  The Court reiterated its earlier holding that "where the identity of the

16  alleged defendant is not known prior to the filing of a complaint, the plaintiff should be

17  given an opportunity through discovery to identify the unknown defendants, unless it is

18  clear that discovery would not uncover the identities, or that the complaint would be

19  dismissed on other grounds."  Id. at 1163 (quoting Gillespie v. Civiletti, 629 F.2d 637, 642

20  (9th Cir. 1980), quotation cleaned up).  Having determined that the plaintiff's use of a

21  Doe defendant was an insufficient reason to dismiss the case, the court then considered

22  whether the complaint would be dismissed on other grounds, even if the correctional

23  officer were identified.  Id.

24      The issue discussed in Wakefield simply has no bearing on the sufficiency of

25  Plaintiff's factual allegations in this case to sue Individual Defendants.  Plaintiff has not

26  sued unidentified Doe defendants so that he might discover the deeds of each before

27  naming allegedly culpable defendants in a future amended complaint; without

28  identifying the actions of any one of them, he has sued eleven individuals who must

now file responsive pleadings without adequate notice of what Plaintiff alleges each to have done.  See Fed. R. Civ. P. 12.  In so doing, he has failed to identify the factual allegations against any of the Individual Defendants, and his causes of action against them should be dismissed.

For the reasons stated above, this Court **RECOMMENDS** Defendants' motion to dismiss for failure to state a claim be **GRANTED** as to Plaintiff's first, second and third causes of action.

**C.      § 1983 Claim Against Individual Defendants for Fourth Amendment Violations**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

Plaintiff alleged in his Complaint that Individual Defendants unreasonably seized both his home and his car in violation of the Fourth Amendment.  (ECF No. 6 at 5-6.) Defendants here do not challenge whether they were state actors, but instead argue they are protected by qualified immunity, because Plaintiff has not adequately pled any Fourth Amendment violations and Individual Defendants did not violate any clearly established right.  (ECF No. 23-1 at 15-18.)  As discussed in section IV.B., supra, Plaintiff's failure to plead facts showing that any of the Individual Defendants personally participated in the alleged violation renders the SAC inadequate against all Defendants. Nevertheless, the Court considers whether Plaintiff's allegations are sufficient to state a claim against any hypothetical defendant.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  The doctrine therefore protects state actors from liability in a § 1983 lawsuit, "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have

violated."  Anderson v. Creighton, 483 U.S. 635, 638 (1987).  The inquiry is an objective one—focused on "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When applicable, qualified immunity completely insulates state actors from § 1983 litigation.  Anderson, 483 U.S. at 646.  To achieve qualified immunity's primary purpose of resolving meritless "insubstantial claims" brought against state actors prior to discovery, immunity questions should be resolved as early as possible in litigation. Pearson, 555 U.S. at 231-32 (quoting Anderson, 483 U.S. at 640, n.2).

When evaluating a case wherein the defendant asserts the defense of qualified immunity, courts examine (1) whether the state actor's alleged misconduct violated a constitutional right and (2) whether the right was clearly established at the time of the alleged misconduct.  Id. at 232.  The defense of qualified immunity fails only if the court finds both that a constitutional right has been violated and that the right was clearly established at the time.  Id.  While the "Constitution's 'elaboration from case to case'" favors considering whether there was a constitutional violation before determining whether the same was clearly established, (id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)), courts have discretion to consider these elements in any order they choose, (id. at 236).

### 1.    Plaintiff's Fourth Amendment claims

Plaintiff's complaint asserts Fourth Amendment violations based on two different factual bases: (1) "by failing to secure the premises [(Plaintiff's house)] after taking control, [Individual] Defendants unreasonably seized them and everything within them," and (2) "[b]y taking possession, impounding, and dispensing with the car, [Individual] Defendants unreasonably seized it."  (ECF No. 6 at 6.)  Individual Defendants dispute both theories, noting the facts alleged into the SAC pertaining to the failure to secure Plaintiff's home do not qualify as a seizure under the Fourth Amendment and Plaintiff has not pled the "absence of all legitimate reasons to seize and impound [Plaintiff's] car."  (Id. at 16 (emphasis in original), 17-18.)

The Fourth Amendment, in part, protects "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." United States v. Jones, 565 U.S. 400, 404 (2012).  The Fourteenth Amendment applies the protections of the Fourth Amendment to the states.  Mapp v. Ohio, 367 U.S. 643, 654-55 (1961).  The problem addressed by the Fourth Amendment is the "'misuse of power,' . . . not the accidental effects of otherwise lawful government conduct."  Brower v. Cty. of Inyo, 489 U.S. 593, 596 (1989) (quoting Byars v. United States, 273 U.S. 28, 33 (1927)).  The constitutional protection of the Fourth Amendment applies solely to searches and seizures inflicted by government actors.  United States v. Jacobsen, 466 U.S. 109, 113 (1984).

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." Id.; see also Soldal v. Cook County, Ill., 506 U.S. 56, 69 (1992) (holding that when law enforcement officers assisted a landlord in dispossessing the plaintiff of his mobile home by "physically tearing [the home] from its foundation and towing it to another lot," those actions constituted a seizure, stressing how the actions clearly interfered with the plaintiff's possession of his home).  Once property has been seized, the question becomes whether the defendants "acted reasonably under the Fourth Amendment."  Lavan v. City of Los Angeles, 693 F.3d 1022, 1030 (9th Cir. 2012).

### a.  Failure to secure the house

The Court first turns to Plaintiff's claim that Individual Defendants' failure to secure his house was an unreasonable seizure of his home and everything therein that violated the Fourth Amendment.  (See ECF No. 6 at 6.)  Defendants argue that the alleged actions do not describe a seizure for Fourth Amendment purposes, as failing to lock Plaintiff's home did not interfere "with his possessory interest in his house."  (ECF No. 23-1 at 16.)

The specific facts relevant to the Individual Defendants' actions vis a vis Plaintiff's house are that (1) Plaintiff opened his door and let the Individual Defendants in, (2)

1   Individual Defendants took Plaintiff's keys, (3) Plaintiff asked Individual Defendants to

2   lock the door to his house as they were arresting him, (4) Defendants failed to secure

3   Plaintiff's house, and (5) when Plaintiff's girlfriend asked at least one Individual for the

4   key to lock up, that person or people refused.  (See ECF No 6 at 3-4.)  Plaintiff's other

5   allegations, causally connecting Individual Defendants' actions to third party looting, (id.

6   at 4 (alleging "because of Defendants' failure to secure Plaintiff's residence, Plaintiff's

7   home was looted and squatted in")), or asserting the legal significance of various

8   actions, (id. at 5 ("Defendants took control of Plaintiff's residence by removing him from

9   the premises and taking his keys.") and 6 ("By failing to secure the premises after taking

10  control, Defendants unreasonably seized them and everything within them."), are not

11  factual allegations, but legal conclusions based on the facts presented, which the Court

12  is not required to assume are true.  See Iqbal, 556 U.S. at 678 ("[T]he tenet that a court

13  must accept as true all of the allegations contained in a complaint is inapplicable to legal

14  conclusions.").

15          Though Plaintiff does not address Defendant's position that these pleaded facts

16  fail to describe a Fourth Amendment seizure, he cited in the SAC to Soldal, for the

17  proposition that the Fourth Amendment protects "property being seized 'to collect

18  evidence, verify compliance with a housing regulation, effect an eviction by the police,

19  or on whim, for no reason at all.'"  (ECF No. 6 at 5.)  The Court in Soldal considered

20  whether a police officer's facilitation of the disconnection and relocation of the

21  plaintiff's mobile home was a seizure for Fourth Amendment purposes.  Soldal, 506 U.S.

22  at 61-62.  The Court rejected the appellate court's determination that while technically a

23  seizure, the seizure had not implicated the Fourth Amendment, "because the officers

24  had not entered Soldal's house, rummaged through his possessions, or . . . interfered

25  with his liberty in the course of the eviction."  Id. at 62-63.  The Court explained that

26  "the Amendment [unmistakably] protects property as well as privacy," despite the

27  appellate court's belief that privacy and liberty were the amendment's primary

28  concerns.  Id. at 62.  While Soldal established that the unreasonable seizure of one's

home and property can be a Fourth Amendment violation without violating a privacy interest, <u>Soldal</u> added little to the law regarding when a seizure occurs—minimal discussion was required for the Court to determine that disconnecting a mobile home from its foundation and towing it away met the <u>Jacobsen</u> standard by interfering with Soldal's possession of his home.  <u>See id.</u> at 61-62 (citing <u>Jacobsen</u>, 466 U.S. at 113).

Though it addressed the seizure of a person rather than property, the Court finds the case of <u>Brower v. County of Inyo</u>, 489 U.S. 593 (1989), instructive on what constitutes a seizure.  In <u>Brower</u>, the Court considered whether police officers' use of a barricade to stop a fleeing driver constituted a seizure, where the law stated that a person is seized "[w]henever an officer restrains the freedom of a person to walk away." <u>Id.</u> at 594-95 (quoting <u>Tennessee v. Garner</u>, 471 U.S. 1, 7 (1985)).  Justice Scalia, writing for the majority, rejected the lower court's finding that there had been no seizure because the fleeing driver's voluntary failure to stop, rather than the road block, had terminated his movement.  <u>Id.</u> at 595.  Justice Scalia explained that "[v]iolation of the Fourth Amendment requires an <u>intentional</u> acquisition of physical control" and that "the taking itself must be willful."  <u>Id.</u> at 596 (emphasis added).  The Court determined the creation of the roadblock was a seizure because it is "enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place <u>in order to achieve that result</u>."  <u>Id.</u> at 599 (emphasis added).  The Court distinguished the scenario of the roadblock from a hypothetical scenario in which a fleeing driver simply loses control of the vehicle and crashes, because unlike the roadblock, the officer's attempt to stop the driver by pursuing him with flashing lights does not stop the hypothetical fleeing driver, his unintended loss of control does.  <u>Id.</u> at 597.

Plaintiff's alleged facts do not demonstrate that Individual Defendants took possession of his Plaintiff's home and its contents or dispossessed him of it.  (<u>See</u> ECF No. 6.)  Instead he alleges that Individual Defendants "failed to secure his home," or left it unlocked, and presumably other unidentified third parties, not the defendants, damaged his home and dispossessed him of his property.  As alleged, at the point that

Individual Defendants left Plaintiff's home unsecure, nothing but Plaintiff's arrest (the lawfulness of which Plaintiff does not challenge here) prevented Plaintiff from returning to his home.  Further, Plaintiff could have sent his girlfriend or another agent to safeguard his home.  The stated facts simply do not describe officers' substantial interference with Plaintiff's possession of his home or other property therein by any willful action intended for that purpose as <u>Brower</u> requires.

Accordingly, this Court concludes that Plaintiff has failed to allege facts showing that any officers violated Plaintiff's Fourth Amendment rights by failing to secure his home and the property therein, and therefore the Court need not ascertain whether their actions were reasonable.  <u>See</u> <u>Calvin v. Whatcom Cty.</u>, No. C07-273RSL, 2010 WL 724679, at *3 (W.D. Wash. Feb. 26, 2010) ("[T]he Court cannot discern how a violation of [the right to be free from unreasonable seizure] is plausibly supported by plaintiff's allegations that defendants failed to adequately lock plaintiff's residence and that third parties later burglarized and/or vandalized his residence.").  In reaching this conclusion, the Court notes a distinction drawn by previous courts in § 1983 actions, that the issue of whether specific conduct violates the constitution is distinct from whether it is otherwise wrong or may justify tort liability.  <u>See, e.g.</u>, <u>Baker v. McCollan</u>, 443 U.S. 137, 142 (1979) ("Respondent's claim is that his detention in the Potter County jail was wrongful.  Under a tort-law analysis it may well have been.  The question here, however, is whether his detention was unconstitutional."); <u>Jessop v. City of Fresno</u>, 936 F.3d 937, 942 (9th Cir. 2019) ("We recognize that the allegation of any theft by police officers— most certainly the theft of over $225,000—is deeply disturbing.  Whether that conduct violates the Fourth Amendment's prohibition on unreasonable searches and seizures, however, would not 'be "clear to a reasonable officer."'").

In support of his argument that Individual Defendants are liable for the subsequent actions of third parties, Plaintiff cites to several cases for the principle that "[t]he obligation to safeguard property is well-established."  (ECF No. 24 at 24.) However, Plaintiff's cited cases have no bearing on the facts before the Court.  Each of

those cases addresses the defendant officers' direct destruction of the plaintiffs'

property while executing a search warrant.  See San Jose Charter of Hells Angels

Motorcycle Club v. City of San Jose, 402 F.3d 962, 971-75 (9th Cir. 2005) (considering

whether officer's order to seize every item with indicia of Hells Angels affiliation, which

required the seizure and destruction of "truckloads" of property was unreasonable

when the search warrant authorized the seizure of any such indicia); Mena v. City of

Simi Valley, 226 F.3d 1031, 1041 (9th Cir. 2000) (considering whether officers "callously

and needlessly ransacking [plaintiffs'] home and destroying property" during execution

of search warrant violated the Fourth Amendment);  Bergquist v. County of Cochise, 806

F.2d 1364, 1369 (9th Cir. 2000) (remanding to lower court to consider whether officer's

destruction of plaintiffs' property was reasonably necessary to the execution of a search

warrant, as required to be reasonable under the Fourth Amendment).  Since Plaintiff

does not allege that Individual Defendants personally destroyed or seized his property,

these cases are inapplicable.

   Similarly, Plaintiff cites to several cases in his Opposition regarding the state-

created danger doctrine.  (ECF No. 24 at 9.)  Defendants accurately point out that

Plaintiff's cited cases are again inapplicable to the facts and claims now before the

Court.  (ECF No. 25 at 9.)  The application in those cases of the principle that an officer

may violate an individual's "interest in personal security under the fourteenth

amendment" by acting with deliberate indifference regarding the plaintiff's physical

safety, has no bearing on the Fourth Amendment claims Plaintiff raises here.  See Wood

v. Ostrander, 879 F.2d 583, 588 (9th Cir. 1989) (holding that where facts showed an

officer arrested the driver, impounded his car, and left the female passenger by the side

of the road in a high crime area, plaintiff had shown disregard to the passenger's safety

amounting to deliberate indifference);  L.W. v. Grubbs, 974 F.2d 119, 121 (9th Cir. 1992)

(explaining that the "danger-creation" exception applies to the general rule that

"members of the public have no right [under the Fourteenth Amendment] to sue state

employees who fail to protect them against harm inflicted by third parties," and

19cv1360-LAB (MSB)

requires "affirmative conduct on the part of the state placing the plaintiff in danger"); Penilla v. City of Huntington Park, 115 F.3d 707, 709-710 (9th Cir. 1997) (discussing the state-created doctrine in the context of claim that officers violated the Fourteenth Amendment by depriving the decedent of his life without due process of law when after determining he was in medical distress, officers cancelled the ambulance that had been dispatched to assist him, and locked decedent in his home, alone and out-of-view); Kennedy v. City of Ridgefield, 439 F.3d 1055, 1061-62 (9th Cir. 2006) (analyzing the plaintiff's claim that the defendant "violated her Fourteenth Amendment right to substantive due process by placing her in a known danger with deliberate indifference to her personal, physical safety"); Johnson v. City of Seattle, 474 F.3d 634, 641 (9th Cir. 2007) (finding the "the [plaintiffs] have failed to offer evidence that the [d]efendants engaged in affirmative conduct that enhanced the dangers the [plaintiffs] exposed themselves to" and so they had not stated a due process violation); Henry A. v. Willden, 678 F.3d 991, 1002 (9th Cir. 2012) (applying rule that "[t]he State can also be held liable under the Fourteenth Amendment's Due Process clause for failing to protect an individual from harm by third parties 'where the state action "affirmatively place[s] the plaintiff in a position of danger," that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced'") (internal citations omitted).  Plaintiff has offered no authority that this rule extends to property rather than personal safety, or applies at all outside of the Fourteenth Amendment context.  Because Plaintiff's § 1983 cause of action against Individual Defendants relies on the Fourth Amendment's protection of property and not the Fourteenth Amendment's protection of personal safety, these cases have no applicability to this cause of action.

**b.    Impound of Plaintiff's car**

Plaintiff alleges that "[b]y taking[] possession, impounding, and dispensing with [his] car, Defendants unreasonably seized it."  (ECF No. 6 at 6.)  He further alleges that the seizure if his car is unrelated to any criminal prosecution or warrant.  (Id.)

1   Defendants argue that these allegations fail to state a Fourth Amendment claim,

2   because Plaintiff did not allege facts that establish "the absence of all legitimate reasons

3   to seize and impound his car," as would be necessary to permit "more than the mere

4   possibility of misconduct." (ECF No. 23-1 at 16 (quoting Twombly, 550 U.S. at 555), ECF

5   No. 25 at 7-8 (same).) Plaintiff concedes that "seizing a car and not charging a person

6   with a crime does not, alone violate the Fourth Amendment," and that such facts do not

7   state a cause of action. (ECF No. 24 at 14.) Plaintiff instead argues that Defendants

8   violated the Fourth Amendment when they "dispense[d] with the car so Plaintiff cannot

9   retrieve it or the property in it."[7] (Id.) Defendants counter that Plaintiff has not pled

10   facts sufficient to show that the alleged disposal was unreasonable because he has not

11   pled that it was unjustified. (ECF No. 25 at 7.)

12          While the continued impound or deprivation of lawfully seized property may

13   violate the Fourth Amendment if unjustified, Plaintiff has not pled facts alleging that the

14   disposal of his vehicle was not legally justified such that it violated the Fourth

15   Amendment. See Brewster v. Beck, 859 F.3d 1194, 1197 (9th Cir. 2017) (finding the

16   impound of a vehicle is a seizure, which is only reasonable so long as "the government's

17   justification holds force"). Plaintiff simply states the legal conclusion that the

18   "Defendants unreasonably seized [his car]" without stating the facts that are alleged to

19   have made the treatment of the car unreasonable. (See ECF No. 6 at 6.) While Plaintiff

20   alleges that "Defendants' seizures of Plaintiff's home and personal property are

21   unrelated to any criminal prosecution or warrant. . . .[and] concern the Defendants'

22   failure to secure Plaintiff's property in the course of an arrest," this statement does not

23   appear to pertain to Plaintiff's car, which Plaintiff alleges was impounded rather than

24

25

26   _____

27   [7] Plaintiff states in his argument in opposition that a court ordered the car to be released back,
     however his SAC does not mention this. (See ECF No. 24 at 14.) The Court does not consider this fact
     for purposes of the instant motion to dismiss, since new allegations raised in opposition to the motion

28   to dismiss are not considered pleadings. Khoja, 899 F.3d at 1014.

1   left unsecured.  (See id.)  Based on the foregoing, the Court finds that Plaintiff has not

2   stated a Fourth Amendment claim pertaining to the seizure of his car.

3   **2.   While there is no clearly established law that law enforcement's failure to**

4   **secure a person's property after arrest violates the Fourth Amendment,**

5   **the law is clear that unjustified deprivation of a lawfully seized property**

6   **violates the Fourth Amendment.**

7   Because Plaintiff has failed to adequately plead that Individual Defendants

8   violated his rights under the Fourth Amendment, the Court's recommendation to grant

9   Defendants' motion to dismiss does not require this Court to determine whether

10  Individual Defendants would be entitled to qualified immunity from a properly pled

11  cause of action.  However, such a determination is relevant to Defendant's position that

12  the Court should dismiss Plaintiff's federal claims without leave to amend.  (See ECF No.

13  23-1 at 22 (asking the Court to dismiss without leave to amend); ECF No. 25 at 13

14  (same)); see also Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) ("[W]e have repeatedly

15  held that 'a district court should grant leave to amend even if no request to amend the

16  pleading was made, unless it determines that the pleading could not possibly be cured

17  by the allegation of other facts.'").  The Court will therefore discuss whether the law

18  regarding Individual Defendant's alleged Fourth Amendment violations is clearly

19  established such that qualified immunity would not bar Plaintiff's claims, if properly

20  pled.

21  For a state actor to be held liable for a constitutional violation under § 1983,

22  clearly established law must have provided the defendant with fair warning that the

23  conduct in question was unconstitutional.  Jessop, 936 F.3d at 940 (citing Tolan v.

24  Cotton, 572 U.S. 650, 656 (2014)).  There need not be a case directly on point, "but

25  existing precedent must have placed the . . . constitutional question beyond debate."

26  Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).  The key question is whether the "contours

27  of the right [are] sufficiently clear that a reasonable official would understand that what

28  he is doing violates that right."  Anderson, 483 U.S. at 640.

As discussed above, the Court finds no support for Plaintiff's claim that any officer's failure to secure Plaintiff's home would be an unreasonable seizure that violated the Fourth Amendment.  Therefore, Individual Defendants would not have been on notice that such conduct would violate the Fourth Amendment, and the claim would be barred by qualified immunity.  This Court finds that the alleged facts regarding officers' failure to secure Plaintiff's home do not describe a Fourth Amendment violation, and certainly not a violation of clearly established law, which further supports dismissal of Plaintiff's first cause of action.  On this basis, the Court also **RECOMMENDS** Plaintiff not be permitted leave to amend a § 1983 claim regarding officers' failure to secure his home.

However, Ninth Circuit case law from 2017 held, in the context of an extended vehicle impound, that "[a] seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force.  Thereafter, the government must cease the seizure or secure a new justification." Brewster, 859 F.3d at 1197; see also Jessop, 936 F.3d at 941 ("Although the City Officers seized Appellants' money and coins pursuant to a lawful warrant, their continued retention—and alleged theft—of the property might have been a Fourth Amendment seizure because '[t]he Fourth Amendment doesn't become irrelevant once an initial seizure has run its course.'") (quoting Brewster, 859 F.3d at 1197).   It is therefore possible that, should Plaintiff sufficiently plead a § 1983 cause of action based on a state actor's continued unjustified seizure or disposal of Plaintiff's car, the claim could survive qualified immunity.  This further supports dismissal of Plaintiff's first cause of action, but this Court **RECOMMENDS** that Plaintiff be permitted leave to amend his § 1983 claim based on the extended impound and disposal of his vehicle.

## D.    **Plaintiff's Monell Claim**

The parties disagree about whether Plaintiff's allegations support a § 1983 claim against the City of National City under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  Plaintiff alleges Monell liability is proper because National City maintained

secret "policies or customs of permitting the [alleged] wrongs" and Individual

Defendants' alleged constitutional violations "were proximately cause by National City's

deliberate indifference to the maintenance, training, and control of NCPD, and the

injuries and constitutional violations set forth herein were proximately caused by the

customs, practices, policies, and decisions of the Defendant National City, including

inadequately training and supervising Deputies regarding the reasonable and proper

securing of premises and proper investigation of persons when responding to

individuals." (ECF No. 6 at 10-11.) Plaintiff further alleges, on information and belief,

that "the details of this incident has been revealed to the authorized policymakers

within National City, and that such policymakers directly know that the seizure of

Plaintiff's property was not justified," and yet the policymakers have deliberately chosen

to approve and endorse Individual Defendants' actions. (Id. at 10.) Defendants argue

the Monell claim fails because Plaintiff's SAC fails to allege a constitutional violation

against National City and generally lack facts sufficient to support a Monell claim, and

instead relies on an unsupported recitation of the elements of a Monell claim. (ECF No.

23-1 at 19-20; ECF No. 25 at 10.)

A municipal entity may be named as a defendant in a § 1983 lawsuit if the

municipality cause the plaintiff's injury. Monell, 436 U.S. at 690-91. However, such an

entity may not be held liable for an individual employee or agent's action on a theory of

respondeat superior or vicarious liability. Id. at 691-93. "A § 1983 plaintiff can establish

municipal liability in three ways: (1) the municipal employee committed the

constitutional violation pursuant to an official policy; (2) the employee acted pursuant

to a longstanding practice or custom; and (3) the employee functioned as a final

policymaker." Barone v. City of Springfield, Oregon, 902 F.3d 1091, 1107 (9th Cir. 2018)

(citing Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004)). To state a Monell claim against

National City, Plaintiff must allege facts demonstrating that (1) he was deprived of a

constitutional right, (2) the municipality had a policy, (3) the policy evinces deliberate

indifference to Plaintiff's constitutional right; and (4) the municipal policy was the

moving "moving force behind the constitutional violation."  Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (quoting Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir.1997)).  After Iqbal, to survive a motion to dismiss for failure to state a claim, a plaintiff alleging a Monell violation must "(1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur."  Koistra v. Cty. of San Diego, CASE NO. 16cv2539-GPC(AGS), 2017 WL 4700073, at *7 (S.D. Cal. Oct. 19, 2017) (quoting Young v. City of Visalia, 687 F.Supp.2d 1155, 1163 (E.D. Cal. 2010)).

Monell claims, governed by Rule 8, require a plaintiff to plead more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). "While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations."  Id. at 679.  A cognizable Monell claim must contain factual allegations to support causation between the municipal program and the plaintiff's injury.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("the fact that the departmental regulations might have authorized" an unconstitutional policy was irrelevant to the plaintiff's § 1983 claim where Plaintiff's constitutional rights were not, in fact, violated).

> **1.    Plaintiff's Monell claim fails because Plaintiff has not pled a constitutional violation.**

Because this Court has found that Plaintiff has not pled a constitutional violation, this Court also **RECOMMENDS** Defendants' motion to dismiss the Fourth Cause of Action alleging municipal liability against National City be **GRANTED**.  Atayde v. Napa State Hospital, No. 1:16-cv-00398-DAD-SAB, 2016 WL 4943959, at *5 (E.D. Cal. Sept. 15, 2016) (citing Hansen v. Black, 855F.2d 642, 646 (9th Cir. 1989)).  By reasoning of the Supreme Court in Heller v. City of Los Angeles, "[i]f a person has suffered no

1 constitutional injury at the hands of the individual police officer, the fact that the

2 departmental regulations might have <u>authorized</u> [unconstitutional actions] is quite

3 beside the point."  475 U.S. 796, 799 (1986) (emphasis in original).

**2.    Plaintiff has not alleged sufficient facts to support his <u>Monell</u> claim.**

5 While Plaintiff's failure to demonstrate the first element of a <u>Monell</u> claim, as

6 discussed above, alone justifies dismissal, the Court will <u>briefly</u> discuss the sufficiency of

7 Plaintiff's allegations as to other elements of his municipal liability claim to inform any

8 potential third amended complaint.

9 Plaintiff's allegations in the instant case essentially recite the elements for a

10 municipal violation based on theories of policy and custom, failure to train, and

11 ratification of conduct by a decision maker.  (<u>See</u> ECF No. 6 at 8-12; ECF No. 24 at 15

12 (arguing that Plaintiff has adequately pled that National City has a policy or custom by

13 stating that "National City 'knew their[sic] officers were engaging in unlawful seizures of

14 arrestees' homes and property' and has 'policies or customs of permitting the wrongs

15 set forth above, by deliberate indifference to widespread police abuses, failing and

16 refusing to fairly and impartially investigate, discipline or prosecute peace officers who

17 commit acts of unlawful seizure, each ratified and approved by National City through

18 NCPD.'").)  Plaintiff's SAC does not satisfy the post-<u>Iqbal</u> pleading requirements.  Each of

19 the allegations Plaintiff makes are conclusory and not accompanied by facts which might

20 permit the Court to infer that National City caused any constitutional violation that

21 might entitle Plaintiff to relief.  <u>See, e.g.</u>, <u>Koistra</u>, 2017 WL 4700073, at *8 (finding

22 plaintiff's Monell claim was "merely present[ed] a recitation of elements of <u>Monell</u>

23 causes of action based on policy, practice or custom, and failure to train and supervise

24 and [did] not provide any supporting facts," where pleadings in complaint were very

25 similar to those in this case).

26 **E.    Fifth Cause of Action**

27 The Court has not yet addressed Plaintiff's fifth cause of action, based on state

28 law.  (<u>See</u> ECF No. 6 at 12.)  Because this Court finds that Plaintiff has failed to state a

federal cause of action and recommends that the District Court dismiss Plaintiff's first through fourth causes of action, the Court also **RECOMMENDS** the District Court exercise its discretion to **DISMISS** Plaintiff's fifth cause of action without prejudice.  28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers of Am. V. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

## V.  SUMMARY OF RECOMMENDATIONS

To summarize the above recommendations, the Court recommends that the District Judge grant Defendants' Motion to Dismiss.  In reaching this recommendation, the Court specifically recommends that:

(1)    Plaintiff's first cause of action pursuant to § 1983 violations based on violations of the Fourth Amendment be dismissed for failure to state a claim, and that the dismissal of this cause of action be with leave to amend only in a manner consistent with this Report and Recommendation;

(2)    Plaintiff's second and third causes of action based on state law be dismissed for failure to state a claim with leave to amend;

(3)    Plaintiff's fourth cause of action for Monell liability be dismissed for failure to state a claim with leave to amend only in a manner consistent with this this Report and Recommendation; and

(4)    Plaintiff's fifth cause of action based on state law be dismissed pursuant to the Court's discretion not to exercise supplemental jurisdiction.

## VI. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) **GRANTING** Defendants' Motion to Dismiss Plaintiff's SAC as summarized above.

1  **IT IS ORDERED** that no later than **August 14, 2020**, any party to this action may

2  file written objections with the Court and serve a copy on all parties.  The document

3  should be captioned "Objections to Report and Recommendation."

4  **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the

5  Court and served on all parties no later than **August 28, 2020**.  The parties are advised

6  that failure to file objections within the specified time may waive the right to raise those

7  objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th

8  Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

9  **IT IS SO ORDERED.**

10  Dated:  July 31, 2020

11

12  Honorable Michael S. Berg
United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19cv1360-LAB (MSB)